POWELL *v.* JONES & SON.

Opinion delivered March 29, 1926.

1. STATUTE OF FRAUDS—ORIGINAL UNDERTAKING.—Where several persons agreed to subscribe the money to build a bridge, an agreement by one of the subscribers to assume the obligations of certain other subscribers, in consideration that another subscriber would advance the amount necessary to pay for the bridge, was an original undertaking and not within the Statute of Frauds.

2. PARTIES—JOINT OWNERS OF ACCOUNT SUED ON—EVIDENCE.—In an action on an account, evidence tending to prove that plaintiff was not the sole owner of the account, but was a member of the a copartnership which owned the debt, was competent.

Appeal from St. Francis Circuit Court; *E. D. Robertson,* Judge; affirmed.

*Walter Gorman,* for appellant.

*C. W. Norton,* for appellee.

McCULLOCH, C. J.   This is an action instituted by appellant in the circuit court of St. Francis County to recover on an account in the sum of $256.79 against appellees, purchased at a bankrupt sale.   Scott Bond & Sons, a copartnership composed of Scott Bond and his two sons, were engaged in operating a gin in the town of Madison, Arkansas, and appellees, another copartnership, became indebted to the former in the amount mentioned in the complaint for the ginning of cotton.   The firm of Scott Bond & Sons was adjudged bankrupt, and, at a sale of the assets by the trustee, appellant became the purchaser of the account against appellees, who, in their answer in this case, admitted the correctness of their account with Scott Bond & Sons for ginning, but they pleaded a set-off against Scott Bond & Sons, which, if valid and correct, more than extinguished the account owned by appellant.   There was a trial on the issues before a jury, and the verdict was in favor of appellees.

The principal contention for reversal of the judgment is that the verdict was not supported by legally sufficient evidence, in that the claim of appellees against Scott Bond & Sons is within the Statute of Frauds, and therefore unenforceable.   The principal item in the asserted accounts of appellees against Scott Bond & Sons is a charge of $340, which constituted a portion of the cost of the construction of a bridge.   It appears from the testimony that the two firms of Scott Bond & Sons and L. B. Jones & Son were both engaged in the mercantile business at Madison, were the owners of property in the vicinity, and were interested in the general welfare of the community.   It became necessary to build a bridge along the public road over Crow Creek, and, as the county court would not build the bridge, it was determined by interested parties in the neighborhood to build it by private subscription.   L. B. Jones, a member of appellee

firm, was the leader in the movement, and he prepared the subscription list, on which was indicated the names of those who were expected to subscribe, and the amounts of the respective subscriptions. The list was merely an open memorandum without any signatures, and it was handed to W. A. Thorn, another member of the firm, to circulate among the persons expected to subscribe, including Scott Bond & Sons. Thorn testified that he went to Scott Bond & Sons with the list, and that he and one of the members of the firm went over the list to determine which of the persons on the list should be seen by the members of the Scott Bond firm, and that it was agreed that certain of the subscribers were to be seen in that way. He also testified that Scott Bond & Sons verbally agreed to contribute $150. Thorn testified further that he subsequently conferred with Scott Bond & Sons, and was informed by a member of the firm that all of the persons named on the list given to him had agreed to the subscriptions indicated on the list, and would pay the same when called on—that many of them already had money on deposit with the firm. The subscriptions were all verbal, and after the list was complete a contract was made with a mill concern for the purchase of the lumber, and with another concern for the construction of the bridge. When the bridge had been completed, Thorn, according to his testimony, went back to Scott Bond & Sons to collect the subscriptions, and an agreement was then made between them that L. B. Jones & Son should advance the money to pay for the material and the construction of the bridge, and that, in consideration thereof, Scott Bond & Sons would pay their own subscription as well as the subscriptions obtained by them from other parties, and that the same should be charged to Scott Bond & Sons by L. B. Jones & Son.

There is a sharp conflict in the testimony, but, in order to test its legal sufficiency, we must give it the highest probative force of which it is susceptible. Accepting the testimony of Thorn as true, it establishes the fact that L. B. Jones & Son advanced the money for the pay-

ment of the bridge upon faith of the agreement with Scott Bond & Son that they would pay the subscriptions amounting to $340. This testimony thus established an original contract, made upon sufficient consideration, and it was not a contract to answer for the default of another, which is within the Statute of Frauds. The consideration for the promise of Scott Bond & Sons was the undertaking of L. B. Jones & Son to advance the money for the payment of the bridge. The mutual undertakings of the parties afforded sufficient consideration to support the contract of either. The contract was not to answer for the debt or default of another, but an agreement, based upon sufficient consideration, to pay a stated amount. The evidence is therefore sufficient to sustain the verdict.

The only other assignment of error is based upon rulings of the court permitting appellees to introduce testimony concerning the operation of the business at Madison after the purchase of the assets by appellant at the bankrupt sale. The court permitted appellees' counsel to interrogate witnesses concerning the method of conducting the business at Madison and the participation therein of the members of the old firm of Scott Bond & Sons. The evidence was sought to be brought out by appellees that appellant was not the sole owner of the account, and that there was an absence of necessary parties. It was competent to prove that appellant was not the sole owner of the debt, but, on the contrary, was a member of the copartnership which owned the debt. It is unnecessary to determine now whether or not the evidence was sufficient to establish that fact, but appellees were entitled to introduce testimony in an effort to prove it. We think there was no error in the rulings of the court in this regard.

Judgment affirmed.